# Exhibit A

**(excerpts from deposition of Joseph Petrucelli)**

# In The Matter Of:

*RAYMOND WRAY*

*v.*

*CITIMORTGAGE, INC.*

---

## *JOSEPH R. PETRUCELLI, CPA - Vol. 1*
### *June 3, 2014*

---

**MERRILL CORPORATION**

**LegaLink, Inc.**

225 Varick Street
10th Floor
New York, NY 10017
Phone: 212.557.7400
Fax: 212.692.9171

JOSEPH R. PETRUCELLI, CPA - 6/3/2014

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION
CASE NO. 3:12-3628-CMC

RAYMOND WRAY, individually         :
and as Class Representatives       :
of others similarly                :
situated,                          :
       Plaintiffs,             :
                                   :
       v.                      :
                                   :
CITIMORTGAGE, INC.,                :
       Defendant.              :

    Transcript of the videotape deposition of JOSEPH R. PETRUCELLI, CPA, called for Oral Examination in the above-captioned matter, said deposition taken by and before SILVIA P. WAGE, a Certified Shorthand Reporter, Certified Realtime Reporter, Registered Professional Reporter, and Notary Public for the States of New Jersey, New York, Pennsylvania and Delaware, at the offices of SAIBER LLC, One Gateway Center, 10th Floor, Newark, New Jersey, on Tuesday June 3, 2014, commencing at 8:55 a.m.

JOB NO. 1801-208334

JOSEPH R. PETRUCELLI, CPA - 6/3/2014

Page 2

```
 1   A P P E A R A N C E S:
 2
             RICHARD A. HARPOOTLIAN, P.A.
 3       BY: GRAHAM L. NEWMAN, ESQ.
         BY: RICHARD A. HARPOOTLIAN, ESQ.
 4       1410 Laurel Street
         Columbia, South Carolina  29201
 5       (803) 252-4848
         Gln@harpootlian.com
 6       Rah@harpootlian.com
         Counsel for the Plaintiffs
 7
 8
             MAYER BROWN, LLP
 9       BY: DEBRA BOGO-ERNST, ESQ.
         BY: FRANK M. DICKERSON, ESQ.
10       71 S. Wacker Drive
         Chicago, Illinois  60606
11       (312) 701-7403
         Dernst@mayerbrown.com
12       Fdickerson@mayerbrown.com
         Counsel for the Defendants
13
14
15   A L S O   P R E S E N T:
16
         RYAN MCMULLEN
17       VIDEOGRAPHER
18
19
20
21
22
23
24
25
```

1   through records without identifying largely what
2   they're doing where all I wanted was payments.  I
3   mean, I'm getting these other things which have
4   adjustments, changes to -- I'm like even if like it
5   would have been like, oh, Mr. Petrucelli, 510,
6   here's how we did it, principal times rate times
7   that.  It was just 510.  After we go, oh, well, we
8   can see how you got to 418, we're within a couple
9   dollars, maybe slight difference, we can live with
10  that because it's easy.  You get a special
11  calculator out.  You put principal in, remaining
12  term, times interest and you get a payment.
13         So I just want to be clear that if I was to
14  get the electronic payment history, I could give you
15  exact numbers.  But I wasn't given that, even though
16  I was told I was going to get it.
17         Q.    Do you understand that different
18  servicers service Sergeant Wray's loan over the
19  course of the life of his loan?
20         A.    Yes.
21         Q.    Do you understand that different
22  servicers have different systems for servicing
23  loans?
24         A.    Right.
25         Q.    Do you understand that CitiFinancial

1    Mortgage Company serviced Sergeant Wray's loan for a
2    period of time?
3         A.    Yes.
4         Q.    Do you understand that CitiMortgage,
5    Inc., serviced Wray's loan for a particular period
6    of time?
7         A.    Correct.
8         Q.    Do you understand that CitiFinancial
9    Mortgage Company has a different loan servicing
10   system than CitiMortgage, Inc.?
11        A.    Yes.
12        Q.    Okay.  So the payment histories that
13   were printed and produced to you were from different
14   loan servicing systems.  So there --
15        A.    But they're printed in paper,
16   correct?  I just want to be --
17        Q.    For example -- yes, they were printed
18   on paper.
19             CitiFinancial Mortgage Company, Inc., no
20   longer exists and its loan servicing system no
21   longer exists.
22        A.    Okay.
23        Q.    So you have the best available
24   records.
25             And so, I guess, what I'm asking you is, did

Page 157

1  you try to input into a simple Excel spreadsheet the
2  payments as Mr. Wray made them on the account and
3  tried to offset them based on, you know, any
4  adjustments that were made or anything that actually
5  occurred on Wray's account?
6         A.    Yes, we did try but we couldn't.  So
7  but my point was every one of those companies,
8  whether they're discontinued or not, could have
9  dumped it into an Excel like you're explaining and
10 given it to me in electronic format.
11         The fact is whether they don't use the
12 service or not, I can't imagine them not having some
13 electronic form to dump into Excel.  I mean, it's a
14 database.  So, I mean, there's all kinds of things
15 we could do.
16         If we were given in electronic format, we
17 could have pieced it back together and then I could
18 -- you know, but we tried, we tried manually.  But
19 there's a lot -- you know, you're talking a lot of
20 data and a lot of different -- and a lot of
21 different documents, meaning, one person would have
22 this on it, another person would have another.  So
23 it was contradicting documents.
24         So all I wanted was electronic rather than
25 paper and we could have data mined it because we, as

1    forensic accountants, we do a lot of data mining.
2         Q.    Do you know what's available from an
3    exportation perspective from CitiMortgage, Inc.'s
4    loan servicing system?
5         A.    As long as it's a database, it has to
6    be exported.  It could be -- it doesn't necessarily
7    have to be even Excel.  It could be SQL.  It could
8    be database language based.
9              Again, we weren't forwarded any information
10   as to the electronic ability and that's what -- that
11   would be a critical piece to doing the analysis at
12   the level of detail you want.
13        Q.    From -- at the level of detail I
14   want.
15             So from the perspective -- how is what's on
16   paper different than what's in somebody's system?
17   If you have an exact printout of someone's payment
18   history from the system, why can't you just plug
19   that in yourself and figure it out?
20        A.    Because there's different variables
21   that they put -- we're not Citi -- like, we're not
22   working for Citi.  So they have language that they
23   -- they've done different things.
24             We're -- our whole philosophy is, here's the
25   loan, here's the balance, did he enter into -- is he

1  eligible for the SCRA, trigger No. 1.  Once that
2  triggers, redo the loan at 6 percent.  It goes along
3  until he becomes non-eligible, trigger, bring the
4  loan back to the way it originally was.
5          Those papers have that scenario, have some
6  510 calculation believed to be interest subsidiary
7  and all kinds of different adjustments.  And maybe
8  it's because he didn't pay on time.  I don't know.
9  And there's different kinds of adjustments that went
10 on.
11         But we're trying to come up with a simple
12 applicable formula that can be applied so that when
13 different things happen, people pay ahead, people
14 pay behind, we can adjust the electronic model and
15 as opposed to try and take a hundred pieces of paper
16 and seeing which ones work and which ones -- and how
17 they get to those numbers.
18         And they were screen shots, a lot of them
19 too, a lot of stuff was screen shot.  So I'm
20 thinking to myself, well, you can give me a screen
21 shot, why can't you export it into like a database.
22 So there was a lot of screen shots.
23         It wasn't like a simple, you know, escrow --
24 payment history that I've seen.  I mean, I've seen a
25 -- tons of payoffs and they show you, here's how the